**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KRISTINE DIVNEY, individually and on behalf of others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>DOORDASH INC. d/b/a/ CAVIAR and APPLE PAYMENTS SERVICES LLC,<br><br>Defendant. | Case No. 1:25-cv-05708-MMG<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT DOORDASH, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CASE**

GIBSON, DUNN & CRUTCHER LLP

Esther Lifshitz
elifshitz@gibsondunn.com
200 Park Avenue
New York, NY 10166
Phone: 213.229.7018

Michael Holecek (*PHV*)
mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213.229.7000

*Attorneys for Defendant DoorDash, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 1

A. Divney Repeatedly Agreed to Arbitrate Her Dispute with DoorDash ..... 1

B. Divney's Challenges to the Scope of the Arbitration Agreement Are for the Arbitrator, and Fail on the Merits ..... 4

C. DoorDash Did Not Waive Its Right to Arbitrate ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arkin v. DoorDash, Inc.*,
2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) ....... 1, 5

*Atkins v. Amplitude*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ....... 1

*Barrows v. Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) ....... 2

*Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*,
2024 WL 4349291 (S.D.N.Y. Sept. 30, 2024) ....... 7

*Cota v. Art Brand Studios, LLC*,
2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) ....... 9

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ....... 8

*Davitashvili v. Grubhub Inc.*,
2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023) ....... 7, 8

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....... 2, 3

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ....... 4

*Gould v. Hyundai Motor Co.*,
2025 WL 26806 (C.D. Cal. Jan. 3, 2025) ....... 7

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) ....... 4

*Lawrence v. NYC Med. Prac., P.C.*,
2023 WL 4706126 (S.D.N.Y. July 21, 2023) ....... 9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....... 2, 8

*Micheli & Shel, LLC v. Grubhub Inc.*,
588 F. Supp. 3d 483 (S.D.N.Y. 2022) ....... 4

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*New York Knicks, LLC v. Maple Leaf Sports & Ent. Ltd.*,
2024 WL 3237563 (S.D.N.Y. June 28, 2024) ....................8

*Pabon v. HRB Digital LLC*,
2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025)....................7

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................1

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................4

*Reznik v. Coinbase, Inc.*,
2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) (Garnett, J.)....................5, 6

*Schwapp v. Town of Avon*,
118 F.3d 106 (2d Cir. 1997)....................3

*Scott v. JPMorgan Chase & Co.*,
2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) ....................6

## INTRODUCTION

Plaintiff Kristine Divney repeatedly agreed to DoorDash's Consumer Terms & Conditions ("T&C") and, in the process, consented to arbitrate all disputes with DoorDash. Divney's opposition does not seriously dispute that Divney has accounts with DoorDash and its subsidiary Caviar, signed up for DashPass, and agreed to the T&C multiple times; and that the T&C contain a clear delegation clause assigning to the arbitrator all disputes over the arbitration agreement's scope or validity. Instead, Divney's brief summarily asserts that she cannot be compelled to arbitrate because she disputes the *charges* at issue in the case. Divney offers no supporting case law for this novel argument, because there is none. Divney undisputedly agreed to arbitrate with DoorDash, and she must bring any challenges to the scope or validity of the arbitration agreement to the arbitrator.

Every court that has evaluated DoorDash's T&C has compelled individual consumers to arbitrate their disputes with DoorDash. *See, e.g.*, *Arkin v. DoorDash, Inc.*, 2020 WL 4937825, at *5 (E.D.N.Y. Aug. 24, 2020); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020). In fact, since DoorDash filed its motion, another court has compelled arbitration under DoorDash's T&C. *See Atkins v. Amplitude*, 2025 WL 2521732, at *2–5 (N.D. Cal. Sept. 2, 2025). Divney has provided no reason for this Court to arrive at a different conclusion. Accordingly, the Court should grant the motion and compel Divney to arbitrate her claims.

## ARGUMENT

### A. Divney Repeatedly Agreed to Arbitrate Her Dispute with DoorDash

Divney repeatedly agreed to DoorDash's T&C containing an arbitration agreement, and she presents no evidence to the contrary apart from a cursory denial in her declaration. As described in DoorDash's motion and accompanying declaration, Divney signed up for a DoorDash consumer account on or about September 1, 2015, and later signed up for a DashPass free trial

using her Caviar account on August 13, 2022. Mot. 3–8; Cramer Decl. ¶¶ 8–16. Each time, she received conspicuous notice of the T&C and unambiguously agreed to be bound to them. And those T&C contained straightforward arbitration agreements. *See, e.g.*, Cramer Decl. Ex. B at 4; *id.* Ex. D § 12. Courts have repeatedly enforced these T&C, including their arbitration agreement. *See* Mot. 1–2. Moreover, the Second Circuit has routinely enforced assent to arbitration through similar procedures. *See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705–07 (2d Cir. 2023); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–79 (2d Cir. 2017).

Beyond Divney's sign up for both DoorDash and DashPass, Divney again agreed to the T&C and any updated T&C through her "continued use" of DoorDash's Online Marketplaces, which include Caviar. *Id.* Ex. D § 2. In fact, Divney placed at least 29 Caviar orders in or after August 2022. Mot. 8; Cramer Decl. ¶¶ 17–19. Divney does not address these 29 orders, except to devote substantial space to arguing that her continued use *after* filing this lawsuit, via an order placed on August 5, 2025, does not constitute consent to arbitration. *See* Opp. 4–5. Even if this argument were adequately supported—it is not, as Divney cites no case law at all—it is largely irrelevant given that Divney repeatedly consented to the T&C *before* filing her suit.

In her declaration, Divney variously suggests that she did not "consciously," "knowingly," or "intentionally" sign up for DoorDash or DashPass or agree to the T&C, or that she has no "recollection" of doing so. Divney Decl. ¶¶ 3, 4, 8, 9. She also offers a cursory "den[ial]" of her consent to arbitration, *id.* ¶ 8, without grappling with DoorDash's substantial evidence of her repeated consent and use. As an initial matter, the Court should not credit Divney's bald assertions that she does not remember agreeing to a contract—especially one she repeatedly entered into and for a service she used over two dozen times, and especially when she took affirmative steps to successfully cancel her free DashPass trial, Cramer Decl. ¶ 18. *See Barrows v. Brinker Rest. Corp.*,

36 F.4th 45, 51 (2d Cir. 2022) (where a party "states that she cannot *recall* signing an agreement," "such a declaration ordinarily fails to create a triable issue of fact"). Regardless, Divney's post hoc denials of intent do not void a contract. It is black-letter law that, whether or not "an internet or app user had actual knowledge of the contractual terms, the user will still be bound" if "a reasonably prudent person would have been on inquiry notice of the terms," and "the user unambiguously manifests assent through conduct that a reasonable person would understand to constitute assent." *Edmundson*, 85 F.4th at 703 (cleaned up). As discussed above and in the motion, both prongs were amply satisfied here.

Rather than offer any evidence disputing her assent to the T&C, Divney speculates that her DoorDash account may have been "automatically created" for her. Divney Decl. ¶ 4. This new theory, not alleged in the Complaint but baselessly asserted in Divney's brief, Opp. 2, is belied by the undisputed fact that DoorDash's records show that Divney herself created an account on or about September 1, 2015, by "first filling out the sign-up page information and clicking her agreement to the then-operative T&C." Cramer Decl. ¶ 12. No evidence supports Divney's speculation that an account was automatically created for her. And this assertion does not address Divney's subsequent assent to the T&C when she signed up for DashPass in 2022—which she does not deny doing. The remainder of Divney's declaration consists of bare legal conclusions that the Court should ignore. *See* Divney Decl. ¶¶ 8, 9, 10, 12; *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("To the extent that these affidavits contain bald assertions and legal conclusions," "the district court properly refused to rely on them.").

Rather than support her claims, Divney attempts to distract the Court with unsupported insinuations of purported "systemic issue[s]" with DoorDash's Online Marketplaces. Opp. 3–4; Divney Decl. ¶ 11. Divney points to a few anonymous Reddit posts attached to her Complaint.

*See* Compl. Ex. F. Divney's assertions are unverified hearsay, and DoorDash denies them. But they are irrelevant to Divney's argument that she did not agree to arbitrate her claims with DoorDash.

**B. Divney's Challenges to the Scope of the Arbitration Agreement Are for the Arbitrator, and Fail on the Merits**

Given that Divney entered into an arbitration agreement with DoorDash, all that remains is for the Court to "rigorously . . . enforce [the] arbitration agreement[] according to [its] terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018). Although Divney asserts there was no "meeting of the minds" to arbitrate here, she does not seriously dispute that she has entered into an "arbitration clause" with DoorDash as a general matter. Opp. 1. Rather, her argument—however phrased—is that she is not obliged to arbitrate *this* dispute with DoorDash, because the charge at issue was allegedly unauthorized, and because the dispute supposedly lacks a nexus to her use of DoorDash's platforms. But these are quintessential disputes as to the *scope* of the arbitration agreement—disputes which, under the T&C, have been delegated to the arbitrator, not this Court. And even if the Court were to consider these arguments on the merits, they fail.

It is well-settled that parties may delegate "'gateway' questions of 'arbitrability,'" including "whether their agreement covers a particular controversy," to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67–68 (2019). Here, DoorDash's T&C clearly and unmistakably delegated to the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." Cramer Decl. Ex. D § 12(d). Multiple courts, including in a decision cited by Divney, have found that this language in DoorDash's consumer or merchant T&C validly delegates arbitrability to the arbitrator. *See Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 490–91 (S.D.N.Y.

2022); *Arkin*, 2020 WL 4937825, at *5; *see also Reznik v. Coinbase, Inc.*, 2024 WL 1055002, at *3 n.3 (S.D.N.Y. Mar. 11, 2024) (Garnett, J.) (in case alleging "failure to stop unauthorized transactions," noting that the arbitration agreement contained a provision "delegat[ing] questions of arbitrability to the arbitrator"). Accordingly, questions regarding the scope of the arbitration agreement, such as those raised by Divney here, are for the arbitrator—as is any other question regarding the agreement's validity or applicability.

Divney has no response to this decisive point, and so resorts to reciting basic contracting principles that fail to prove her argument. Divney reiterates that the Court must "decide the question of contract formation." Opp. 2. But there is no genuine dispute that the parties formed a contract to arbitrate their disputes and agreed to delegate arbitrability disputes to the arbitrator. Because Divney's arguments go to scope and arbitrability, the Court's job is done.

Even if the Court reached the question of arbitrability, Divney's claims fall well within the scope of the parties' arbitration agreement. Divney's main argument to the contrary is that the alleged charges at issue were "unauthorized," and "a non-consensual transaction cannot form the basis" for her obligation to arbitrate. Opp. 3. Divney offers no case law to support her theory. That is unsurprising, as it would free any party from their obligation to arbitrate so long as they allege that the dispute involved some unauthorized or non-consensual action (as almost all disputes do). The question is not whether the plaintiff agreed to the defendant's post-contract conduct, but whether the claims fall within the category of disputes that the plaintiff agreed to arbitrate. And here, they do. In the T&C, Divney agreed to arbitrate "any dispute or claim relating in any way" to her "access or use" of the DoorDash Online Marketplaces, including DoorDash, Caviar, **<u>and DashPass</u>**; "any advertising or marketing communications" regarding the DoorDash Online Marketplaces; "any products or services sold or distributed through" DoorDash; or "**<u>any aspect of</u>**

**[her] relationship or transactions with DoorDash**." Cramer Decl. Ex. D § 12(a) (emphasis added). The T&C also set out terms relating to DashPass (a product and service of DoorDash), payments, DashPass subscriptions, and communications from DoorDash. *Id.* §§ 8, 11. Divney alleges that DoorDash charged her for DoorDash's DashPass subscription service for Caviar without authorization, and that DoorDash deceptively advertised that she could cancel a DashPass subscription at any time. *See* Compl. ¶¶ 21–36. Moreover, Divney does not seriously dispute that she *did* previously sign up for DashPass (only that she doesn't recall "knowingly" doing so), and necessarily agreed to the T&C when doing so. The T&C comfortably encompass Divney's dispute.

Divney's theory would make consumer arbitration impossible, as it is the rare plaintiff in a consumer lawsuit who concedes that she consented to the conduct that she is challenging. This is why her theory is not the law. In *Reznik*, for example, the plaintiff alleged that the defendant "fail[ed] to stop unauthorized transactions from being made from his account," and "fail[ed] to communicate with him about those transactions." 2024 WL 1055002, at *3. The defendant responded that such complaints fell within an agreement mandating arbitration of "any dispute, claim, [or] disagreements arising out of relating in any way to access to or use of" the defendant's services, including "any Communications" received and "any products sold or distributed." *Id.* at *2. The Court found that there was "no genuine dispute that the allegations" were "undoubtedly" "within the scope" of the agreement. *Id.* at *3. The same is true here. *See also Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at *1 (S.D.N.Y. Jan. 30, 2014) (compelling arbitration when plaintiff alleged that bank "unilaterally enroll[ed] . . . customers in an overdraft protection service," and "assess[ed] unauthorized and unconscionable fees and charges").

Relatedly, Divney contends that the DoorDash T&C are an "unenforceable 'infinite arbitration clause,'" and that her dispute lacks the requisite "clear nexus to the consumer's use of the platform." Opp. 4. Again, this is an issue of the "applicability" of the T&C that has been delegated to the arbitrator. In *Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*, 2024 WL 4349291, at *10–11 (S.D.N.Y. Sept. 30, 2024), for example, the court enforced a broad arbitration clause applying to "[a]ny dispute, claim or controversy" between the parties, and referred questions about the scope of the clause to the arbitrator. Even on the merits, courts have routinely upheld arbitration clauses with a scope similar to—or broader than—DoorDash's T&C. *See Gould v. Hyundai Motor Co.*, 2025 WL 26806, at *5, *13 (C.D. Cal. Jan. 3, 2025) (agreement covering "any and all disputes and claims" arising out of agreement, vehicle, or services was "sufficiently limited"); *Pabon v. HRB Digital LLC*, 2025 WL 2254008, at *1, *4 (E.D.N.Y. Aug. 7, 2025) (agreement covering "all disputes and claims" was not unconscionable, and noting that "a state common-law rule deeming broadly worded arbitration clauses unconscionable would be at least in tension with the FAA"). And here, Divney's claim plainly involves the "nexus to [her] use of the platform" that she argues is required. Divney, a regular Caviar user, alleges an unauthorized charge for DoorDash's subscription service for Caviar. Such a dispute "'aris[es] out of'" Divney's use of DoorDash's Online Marketplaces, and is within "a reasonable person's expectation for an arbitration agreement." Opp. 4.

Indeed, the principal case cited by Divney, *Davitashvili v. Grubhub Inc.*, 2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023), confirms why arbitration is proper here. In *Davitashvili*, the plaintiffs brought antitrust claims "based solely on purchases made directly from restaurants or from non-defendant meal-delivery platforms," and "specifically *exclude[d]* any purchases made through defendants' platforms." *Id.* at *10 (emphasis added). Thus, the district court found that

the claims were "untethered to defendants' respective terms of use" for their platforms. *Id.* at *11. Or, as the Second Circuit explained on appeal, the plaintiffs' claims "concern their access and use of *other* platforms and restaurants," not their "use of Grubhub's website or mobile application." 131 F.4th 109, 119 (2d Cir. 2025). Here, however, Divney's claims relate to an allegedly unauthorized charge for DoorDash's subscription service on Caviar, the platform for which she has an account and regularly uses (including after this suit was filed). The facts here are thus not anything like those in *Davitashvili*, and there is nothing surprising or unexpected about applying DoorDash's T&C to Divney's claims. *See also New York Knicks, LLC v. Maple Leaf Sports & Ent. Ltd.*, 2024 WL 3237563, at *9–10 (S.D.N.Y. June 28, 2024) (declining to "ponder the hypothetical boundaries" of the arbitration clause in the NBA Constitution "[b]ecause the present dispute . . . has a clear nexus to the NBA Constitution").

Divney has agreed to delegate her challenges regarding the scope or applicability of her arbitration agreement with DoorDash to the arbitrator. But even if the Court addresses these challenges, her dispute readily falls within the agreement.

### C. DoorDash Did Not Waive Its Right to Arbitrate

Finally, Divney argues that DoorDash somehow "waiv[ed]" its right to arbitrate because, on May 29, 2025, Divney allegedly called a DoorDash customer service representative who could not locate a record of the transaction and "advised [Divney] to contact her bank" to dispute any unauthorized charges. Opp. 2, 3, 5. To state this argument is to refute it. In the first place, whether this exchange constituted a waiver of a right to arbitrate is a question for the arbitrator, even when there is no delegation clause as to enforceability of the arbitration agreement, as there is here. Cramer Decl. Ex. D § 12(d). "Ordinarily a defense of waiver brought in opposition to a motion to compel arbitration is a matter to be decided by the arbitrator." *Meyer*, 868 F.3d at 80 (cleaned up).

But even if the Court were to decide this issue, Divney has not established any waiver by

DoorDash. "[W]aiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection." *Lawrence v. NYC Med. Prac., P.C.*, 2023 WL 4706126, at *13 (S.D.N.Y. July 21, 2023) (cleaned up). Thus, "the intent to waive must be clearly established and cannot be inferred from doubtful or equivocal acts or language." *Id.* There is nothing in Divney's brief customer service call that suggests, much less clearly establishes, intent to waive. Divney provides no explanation as to why this call constitutes DoorDash's "refusal to engage" in arbitration or a "disclaime[r]" of its "contractual relationship" with Divney, or is "inconsistent[]" with the arbitration agreement. Opp. 3, 5. She does not identify any supposedly inconsistent language in the T&C, nor does she cite any case law holding that such statements constitute waiver. Indeed, given that the T&C require an informal dispute resolution process before a party may initiate arbitration, *see* Cramer Decl. Ex. D § 12(b), it is unclear how a customer service representative could possibly waive DoorDash's right to arbitration when Divney had not even initiated the procedures necessary for such a process in the first instance. The one case she does cite, *Cota v. Art Brand Studios, LLC*, 2021 WL 4864588, at *8–12 (S.D.N.Y. Oct. 15, 2021), related to a refusal to pay arbitration fees, and is thus entirely inapposite. Divney has fallen woefully short of establishing waiver.

## CONCLUSION

For the reasons stated above and in DoorDash's motion, the Court should compel Divney to arbitrate and stay all further proceedings pending completion of arbitration.

Dated: September 22, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: *<u>/s/ Esther Lifshitz</u>*

GIBSON, DUNN & CRUTCHER LLP

Esther Lifshitz
elifshitz@gibsondunn.com
200 Park Avenue
New York, NY 10166
Phone: 213.229.7018

Michael Holecek (*PHV*)
mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213.229.7000

*Attorneys for Defendant DoorDash, Inc.*

**<u>CERTIFICATION</u>**

I hereby certify, pursuant to Local Rule 7.1(c) and section II.B of the Court's Individual Rules of Practice, that this memorandum of law contains 2,918 words.

By: *<u>/s/ Esther Lifshitz</u>*

GIBSON, DUNN & CRUTCHER LLP

Esther Lifshitz
elifshitz@gibsondunn.com
200 Park Avenue
New York, NY 10166
Phone: 213.229.7018

*Attorney for Defendant DoorDash, Inc.*